IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO



| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL NO. 15-075 (GAG)<br>14-457 (GAG) |
| [7] CARLOS ROSADO-ROSADO<br>a.ka. "Cano,"<br>Defendant. | |

PLEA & FORFEITURE AGREEMENT
(Pursuant to Fed. R. Crim. P. 11(c)(1)(A)&(B))

COMES NOW, the United States of America, by and through the undersigned attorneys, along with defendant [7] Carlos Rosado-Rosado, and his counsel, Carlos M. Sanchez La Costa, Esq., pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A)&(B), and state to this Honorable Court that they have reached a Plea and Forfeiture Agreement, the terms and conditions of which are as follows:

1. **COUNT TO WHICH DEFENDANT PLEADS GUILTY**

Defendant agrees to enter a guilty plea to Count Two (Conspiracy to Murder) of the Indictment filed in Crim. Case No. 15-075 (GAG) on January 28, 2015. The allegations contained in that Indictment – which the defendant acknowledges he has read and understands – are incorporated by reference herein. The defendant further agrees to enter a guilty plea to Count Four in Crim. Case No. 14-457 (GAG).

<u>Count Two in Crim No. 15-075 (GAG)</u>:

From in or about February 1, 2013 through May 1, 2013, in the District of Puerto Rico and elsewhere within the jurisdiction of this Court, [1] Oscar Martinez-Hernandez, a.k.a. "Cali," [2]

Angel D. Ramos-Cruz, a.k.a. "Api," [3] Miguel Diaz-Rivera, a.k.a. "Bolo," [4] Juan Quiñones-Meléndez, a.k.a. "El Manco," [5] Orlando Mojica-Rodriguez, a.k.a. "Yogui," [6] Jayson Rodriguez-Gonzalez, a.k.a. "Gonzo," [7] Carlos Rosado-Rosado, a.k.a. "Cano," [8] Alexander Rosario- de León, a.k.a. "Coquí," and [9] Jancarlos Velázquez-Vázquez, a.k.a. "Jan," the defendants herein, did knowingly and intentionally combine, confederate, and agree together and with each other and other persons, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1114 (Murder of an Officer/Employee of the United States), did, with premeditation and malice aforethought, unlawfully kill Lieutenant Osvaldo Albarati Casanas, a Federal Bureau of Prisons Correctional Officer, an officer and employee of the United States, while Lieutenant Albarati was engaged in and on account of the performance of his official duties. (All in violation of Title 18, United States Code, Sections 1111, 1114 and 1117).

Defendant also agrees to enter into a guilty plea to the lesser included offense contained in Count Four (Possession of a Firearm in Furtherance of a Drug Trafficking Crime) of the Indictment in Criminal Case No. 14-457 (GAG). Count Four of that Indictment reads as follows:

**Count Four in Crim. No. 14-457 (GAG):**

On or about August 14, 2013, in the United States, in the District of Puerto Rico and within the jurisdiction of this Court, Carlos Rosado-Rosado, the defendant herein, did knowingly possess firearms, that is, one (1) pistol with an unknown serial number and one (1) pistol, make Glock, model 17, caliber 9mm, serial number WP747 US, in furtherance of a drug trafficking crime for which he may be prosecuted in a Court of the United States, that is possession with intent to distribute a controlled substance in violation of Title 21, United States Code, § 841(a)(1). All in violation of Title 18, United States Code, § 924(c)(1)(A).

## 2. MAXIMUM PENALTIES

Defendant understands that in relation to Count Two of the Indictment in Crim. No. 15-075(GAG), he shall be punished according to Title 18, United States Code, § 1117, by imprisonment for any term of years or for life. Pursuant to Title 18, United States Code, § 3571(b)(3) the defendant faces a maximum fine of two hundred fifty thousand ($250,000.00). The defendant may also be subject to a term of supervised release of up to five (5) years. *See* Title 18, United States Code, § 3583(b)(1).

Defendant understands that in relation to Count Four in Crim. Case No. 14-457 (GAG) that he shall be punished pursuant to Tittle 18, United States Code, § 924(c)(1)(A)(i), the penalty range for Count Two, a Class A felony under Title 18, United States Code. § 3559(a)(1), is a minimum term of imprisonment of five (5) years and a maximum term of life imprisonment. *See United States v. Ortiz-Garcia*, 665 F.3d 279, 283 (1st Cir. 2011). Pursuant to Title 18, United States Code, § 3571(b)(3), a fine of up to two-hundred and fifty thousand dollars ($250,000.00) may be imposed. A supervised release term of not more than five (5) years may be imposed under Title 18, United States Code, § 3583(b)(1). A Special Monetary Assessment of one hundred dollars ($100.00) shall be imposed pursuant to Title 18, United States Code, § 3013(a)(2)(A).

## 3. FINES AND RESTITUTION

The defendant is aware that the Court may order the defendant to pay a fine and also that the Court may impose restitution. As part of this Agreement, the defendant agrees to execute a financial statement to the United States (OBD Form 500). The United States will make no recommendations as to the imposition of fines or restitution.

4. **RULE 11(c)(1)(B) WARNINGS**

The defendant is aware that the defendant's sentence is within the sound discretion of the sentencing judge, and that the sentence may be imposed by following the United States Sentencing Guidelines, Policy Statements, Application, and Background Notes, which are advisory to the Court. The defendant is aware that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the defendant pleads guilty. If the Court should impose a sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement.

5. **UNITED STATES RESERVATION OF RIGHTS**

The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right: (a) to bring its version of the facts of this case including its file and any investigative files to the attention of the probation office in connection with that office's preparation of a presentence report; (b) to dispute sentencing factors or facts material to sentencing; (c) to seek resolution of such factors or facts in conference with opposing counsel and the probation office.

6. **NO STIPULATION AS TO CRIMINAL HISTORY CATEGORY**

The parties do **not** stipulate as to any Criminal History Category for defendant.

7. **SENTENCING GUIDELINE CALCULATIONS – CRIM NO. 15-075 (GAG)**

Defendant is aware that pursuant to the decision issued by the Supreme Court of the United States in *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are no longer mandatory and must be considered effectively advisory. Therefore, after due consideration of the relevant

factors enumerated in Title 18, United States Code, § 3553(a), the United States and defendant submit the following advisory Guideline calculations related to Criminal Case No.'s 15-075 (GAG).

| SENTENCING GUIDELINE CALCULATION: COUNT TWO 15-075 (GAG) 18 U.S.C. §§ 1111, 1114, & 1117 [Conspiracy to Murder an Employee of the United States] | |
|---|---|
| Base Offense Level: U.S.S.G. § 2A1.1 | 43 |
| Acceptance of Responsibility: U.S.S.G.§ 3E1.1 | -3 |
| TOTAL ADJUSTED OFFENSE LEVEL | 40 |
| RANGE IF CRIMINAL HISTORY CATEGORY I | 292-365 |
| RANGE IF CRIMINAL HISTORY CATEGORY II | 324-405 |
| RANGE IF CRIMINAL HISTORY CATEGORY III | 360-Life |

8. **SENTENCING GUIDELINE CALCULATIONS – CRIM NO. 14-457 (GAG)**

The United States and defendant agree that pursuant to U.S.S.G. § 2K2.4(b), a defendant that is convicted of violating Title 18, United States Code, § 924 (c)(1)(A), has a minimum guideline sentence equal to the minimum term of imprisonment required by statute. Pursuant to Title 18, United States Code § 924(c)(1)(A)(i), there is a minimum term of sixty (60) months imprisonment in this case.

9. **SENTENCE RECOMMENDATION: CRIM NO.'S 15-075 AND 14-457**

After due consideration of the relevant factors enumerated in 18 United States Code § 3553(a), the parties agree to recommend to the Court at the time of sentencing that the defendant be sentenced to a term of imprisonment of seventy-two (72) months for Count Four in Criminal

*Plea Agreement, U.S. v. [7] Carlos Rosado-Rosado, Crim. No.'s 14-457 (GAG) & 15-075 (GAG)*   Page 5 of 14

Case No. 14-457 (GAG). In addition, the parties agree to recommend a sentence of imprisonment between 292-365 months for Count Two in Criminal Case No. 15-075 (GAG) irrespective of the defendant's criminal history. Finally, the parties further agree that these sentences Criminal Case No.'s 14-457 (GAG) and 15-075 (GAG) will run consecutive to one another pursuant to law. *See* 18 United States Code, § 924(c)(1)(D)(ii)

The parties agree that this sentence is reasonable pursuant to Title 18, United States Code, § 3553(a). The parties further agree that any recommendation by either party for a term of imprisonment below or above the stipulated sentence recommendation constitutes a material breach of the Plea Agreement.

**10.    WAIVER OF APPEAL**

Defendant knowingly and voluntarily agrees that if the sentence of imprisonment imposed by the Court is in accord with the parties recommendation in paragraph 9 of this agreement, the defendant waives the right to appeal this case's judgement and sentence, including but not limited to the term of imprisonment, restitution, fines, forfeiture, and any other terms and conditions of supervised release.

**11.    NO FURTHER ADJUSTMENTS OR DEPARTURES**

The United States and defendant agree that no further adjustments or departures to defendant's total adjusted base offense level and no variance sentence under 18 United States Code, § 3553 shall be sought by defendant. The parties agree that any request by defendant for an adjustment or departure will be considered a material breach of this Plea and Forfeiture Agreement, and the United States will be free to ask for any sentence, either guideline or statutory.

## 12. SATISFACTION WITH COUNSEL

Defendant represents to the Court that he is satisfied with counsel, Carlos M. Sanchez La Costa, and states that counsel has rendered effective legal assistance.

## 13. RIGHTS SURRENDERED BY DEFENDANT THROUGH GUILTY PLEA

Defendant understands that by entering into this Plea and Forfeiture Agreement he surrenders certain rights as provided in this agreement. Defendant understands that the rights of criminal defendants include the following:

A. If defendant had persisted in a plea of not guilty to the charges, defendant would have had the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if defendant, the United States and the judge agree.

B. If a jury trial is conducted, the jury would be composed of twelve lay persons selected at random. Defendant and defendant's attorney would assist in selecting the jurors by removing prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges. The jury would have to agree, unanimously, before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent, that it could not convict defendant unless, after hearing all the evidence, it was persuaded of defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately.

C. If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established defendant's guilt beyond a reasonable doubt.

D. At a trial, the United States would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those witnesses and defendant's attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on defendant's own behalf. If the witnesses for defendant would not appear voluntarily, defendant could require their attendance through the subpoena power of the Court.

E. At a trial, defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from defendant's refusal to testify. If defendant desired to do so, defendant could testify on his behalf.

## 14. STIPULATION OF FACTS

The accompanying Stipulation of Facts signed by defendant is hereby incorporated into this Plea and Forfeiture Agreement. Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect and that the United States would have proven those facts beyond a reasonable doubt at trial.

## 15. FIREARMS FORFEITURE

Pursuant to Title 18, United States Code, § 924(d) and Title 28, United States Code, § 2461(c), defendant agrees to forfeit all of his right, title, and interest in the following property (hereafter, collectively, the "Firearm Property"): one (1) Glock pistol, model 17, 9 mm caliber bearing serial number WP747 US; ninety-one (91) rounds of 9mm ammunition; and one hundred (100) rounds of .40 caliber ammunition. Defendant acknowledges that he possessed the Firearm Property in violation of Title 18, United States Code, § 924(c), as set forth in Count Four of the Indictment in Criminal Case No. 14-457 (GAG), and that the Firearm Property is therefore subject to forfeiture to the United States pursuant to Title 18, United States Code, § 924(d)(1) and Title 28, United States Code, § 2461(c).

## 16. LIMITATIONS OF PLEA AND FORFEITURE AGREEMENT

This Plea and Forfeiture Agreement binds only the United States Attorney's Office for the District of Puerto Rico and defendant. It does not bind any other federal district, state, or local authorities.

## 17. ENTIRETY OF PLEA AND FORFEITURE AGREEMENT

This written agreement constitutes the complete Plea and Forfeiture Agreement between the United States, defendant, and defense counsel. The United States has made no promises or

representations except as set forth in writing in this Plea and Forfeiture Agreement and deny the existence of any other term and conditions not stated herein.

### 18. AMENDMENTS TO PLEA AND FORFEITURE AGREEMENT

No other promises, terms, or conditions will be entered unless in writing and signed by all parties.

### 19. DISMISSAL OF REMAINING COUNTS

All remaining counts of both the indictments in 14-572 (GAG) and 15-075 (GAG) will be dismissed at sentencing.

### 20. VOLUNTARINESS OF GUILTY PLEA

Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily and only because he is guilty.

ROSA EMILIA RODRÍGUEZ-VÉLEZ
United States Attorney

_____
Timothy Henwood
First Assistant U.S. Attorney
Dated: 8-8-18

_____
Max Perez-Bouret
Assistant U.S. Attorney
Dated: August 8, 2018

_____
Nicholas W. Cannon
Assistant U.S. Attorney
Dated: 8-8-2018

_____
Carlos Rosado-Rosado
Defendant
Dated: 08/09/2018

_____
Carlos M. Sanchez La Costa
Counsel for the Defendant
Dated: 08/09/2018

## UNDERSTANDING OF RIGHTS

I have consulted with my counsel and fully understand all of my rights with respect to the Indictments pending against me. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the <u>Sentencing Guidelines</u>, <u>Policy Statements</u>, <u>Application</u>, and <u>Background Notes</u> which may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with your attorney. My counsel has translated the plea agreement to me in the Spanish language and I have no doubts to the contents of the agreement. I fully understand this agreement and I voluntarily agree to it.

Date: 08/09/2018

Carlos Rosado-Rosado
Defendant

I am the attorney for the defendant. I have fully explained to the defendant his rights with respect to the pending Indictments. Further, I have reviewed the provisions of the <u>Sentencing Guidelines</u>, <u>Policy Statements</u>, <u>Application</u>, and <u>Background Notes</u>, and I have fully explained to the defendant the provisions of those guidelines which may apply in this case. I have carefully reviewed every part this Plea Agreement with the defendant. I have translated the plea agreement and explained it in the Spanish language to the defendant who has expressed having no doubts as to the contents of the agreement. To my knowledge, the defendant is entering into this agreement voluntarily, intelligently, and with full knowledge of all consequences of defendant's plea of guilty.

Date: 08/09/2018

Carlos M. Sanchez La Costa, Esq.
Counsel for Defendant

## STIPULATION OF FACTS

In conjunction with the submission of the accompanying Plea and Forfeiture Agreement in this case, the United States of America and defendant Carlos Rosado-Rosado agree that the following recital provides a true and accurate summary of the facts leading to defendant's acceptance of criminal responsibility for violations of Title 18, United States Code, § 924(c)(1)(A) and Title 18, United States Code, §§ 1111, 1114, 1117.

Facts Pertaining to Count Four of Criminal Case No. 14-457 (GAG)

Had criminal case no. 14-457 (GAG) proceeded to trial, the government's evidence would have proven beyond a reasonable doubt the following:

On August 14, 2013, the defendant, Carlos Rosado-Rosado was stopped during a routine traffic stop for a window tint violation. At some point during the traffic stop, the defendant was asked to proceed to the police vehicle to sign a citation. Rosado-Rosado fled during the traffic stop and made good on his escape. A subsequent search of the vehicle by law enforcement revealed that the defendant had concealed inside the vehicle the following items: (1) 1 Glock pistol, model 17, 9mm caliber, bearing serial number WP747 loaded with 17 rounds of ammunition; (2) 2 Glock 9mm 30-round capacity pistol magazines, containing 30 rounds in each magazine; (3) 1 empty .45 caliber pistol magazine; (4) 1 box of ammunition containing 14 rounds of 9mm caliber pistol ammunition; (5) 2 boxes of ammunition containing 100 total rounds of .40 caliber pistol ammunition; (6) 1 black mask; (7) 1 small digital scale; (8) 3 small clear plastic bags containing marijuana; (9) 10 clear plastic bags containing cocaine; (10) plastic container with 154 green colored pills bearing "S302" and 13 blue colored pills bearing "G3721;" (11) brass knuckles; (12) 3 cellular phones; (13) 2 SIM cards; (14) $553.00 in U.S. Currency.

For purposes of accepting this plea agreement, the defendant acknowledges that he

possessed the firearms on August 14, 2013 in furtherance of a drug trafficking crime for which he may be prosecuted in the United States, that is possession with intent to distribute controlled substances as charged in Counts One through Three of the Indictment in Criminal Case No. 14-457 (GAG).

Two clue C.RR [initials]

Facts Pertaining to Count Four of Criminal Case No. 15-075 (GAG)

Had criminal case 15-075 (GAG) proceeded to trial against defendant Carlos Rosado-Rosado, the government's evidence would have proven beyond a reasonable doubt, the following:

Prior to February 26, 2013, the defendant, Carlos Rosado-Rosado, had worked as part of a violent drug trafficking organization. Specifically, Rosado-Rosado was a driver or runner in the organization run by [4] Juan Quinones-Melendez, a.k.a. "El Manco." Eventually, Rosado-Rosado was one of the individuals responsible for driving during the execution of murder for hires, which the organization referred to as "vueltas." During his time with the organization, Rosado-Rosado participated in numerous murders as a driver.

On or about February 25, 2013, Rosado-Rosado was informed by El Manco that Rosado-Rosado would serve as driver during a murder the following day at the Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico. Rosado-Rosado then drove to MDC with [6] Jayson Rodriguez-Gonzalez to perform recognizance and learn the route to MDC. The following day, Rosado-Rosado went to a home at the direction of [4] Juan Quinones-Melendez, a.k.a. "El Manco." The home was of El Manco's partner, [5] Orlando Mojica-Rodriguez's, a.k.a. "Yogui." At the meeting, El Manco informed Rosado-Rosado that Rosado-Rosado was going to do a "vuelta" that night at MDC with [6] Jayson Rodriguez-Gonzalez, a.k.a. "Gonzo," and [8] Alexander Rosario de Leon, a.k.a. "Coqui." El Manco provided Rosado-Rosado with a cell phone and explained to him that [2] Angel D. Ramos-Cruz, a.k.a. "Api," would get in touch with him regarding details of the

murder.

Four .40 caliber Glocks were provided to [6] Jayson Rodriguez-Gonzalez, a.k.a. "Gonzo" and [8] Alexander Rosario de Leon, a.k.a. "Coqui," and placed in a hidden compartment in front of the vehicle's stick shift in Rosado-Rosado's vehicle – a charcoal gray Yaris. The three of them then drove towards MDC at the direction of El Manco. As the drove, they received telephone calls from [2] Angel Ramos-Cruz, a.k.a. "Api," asking where the three of them were. Eventually, Rosado-Rosado got near the toll both on highway 22 just beyond the MDC facility. [2] Angel Ramos-Cruz, "Api," had instructed them to park near the prison.

[2] Ramos-Cruz then called them again and stated that Lt. Albarati – the target of the hit – was in a white Veloster. [2] Ramos-Cruz called shortly thereafter and explained that the target was getting into his vehicle and they needed to get the weapons ready. [2] Ramos-Cruz was able to explain to Rosado-Rosado that the Veloster was getting ready to get on expressway 22. Rosado-Rosado observed the white Veloster pass them as they were parked on the shoulder and Rosado-Rosado merged onto highway 22 and followed the Veloster. Before they approached the Rio Honda Shopping Center, Rosado-Rosado pulled his Yaris very close to the white Veloster and [6] Rodriguez-Gonzalez and [8] Rosario de Leon rolled down their windows, pulled out the firearms, and fired into the vehicle driven by Lt. Albarati. Both [6] Rodriguez-Gonzalez and [8] Rosario de Leon had two weapons each and fired until they were empty except Rosado-Rosado recalls that one of the firearms used by [8] Rosario de Leon jammed. Rosado-Rosado exited on the Rio Honda exit and eventually got back onto highway 22 heading in the opposite direction towards Caguas.

[2] Ramos-Cruz called Rosado-Rosado again and asked what happened with the hit. Rosado-Rosado explained that the job was done. After that, [2] Ramos-Cruz instructed Rosado-

Rosado to take the chip away from the phone, break it down, and throw it away. A few months later, Rosado-Rosado received payment for his role in the murder of Lt. Albarati by [4] Quinones-Melendez a.k.a. "El Manco."

_____
Nicholas Cannon
Assistant United States Attorney
Dated: 8-9-2018

_____
Carlos M. Sanchez La Costa
Counsel for Defendant
Dated: 08/09/2018

_____
Carlos Rosado-Rosado
Defendant
Dated: 08/09/2018